Dear Mr. Powell:
On behalf of the Village of Tickfaw, you have requested our opinion regarding the interpretation of the Village's contract for garbage collection. In connection therewith, you have provided us with copies of the Village's Amended Bid Proposal and Mr. John Johnson's bid, which was accepted by the Village. Copies of those documents are attached hereto for reference.
Specifically, you have asked that we examine these documents and advise whether Mr. Johnson should be paid $4.50 for each new resident that moves into the Village regardless of his bid to pick up 225-230 homes for $1280.00 per month, or should he be paid for each resident that moves into town in excess of 225-230 houses?
Before responding to your question, we note that the pertinent language contained within the Amended Bid Proposal is:
 "There are approximately 227 Village residents that use garbage collection."
The pertinent language contained within Mr. Johnson's bid is:
 "Bid for garbage pick up in the City limits of Tickfaw, law approximately 225 to 230 houses . . . All garbage . . . to be picked up every Saturday morning for the sum of $1280.00 per month. Any new residents or extension of town will be $4.50 per household extra."
Although we are not finders of fact (as are the courts), it appears to this office that the parties intended for Mr. Johnson to receive the sum of $1280.00 to pick up garbage for up to "approximately 227 residents" ("225 to 230 houses"), and an additional $4.50 for each resident requiring garbage pick-up in excess of "approximately 227 residents" ("225 to 230 houses"). The
Village's Amended Bid Proposal refers to a specific number of residents, and Mr. Johnson's bid refers to a specific number of houses. Furthermore, Mr. Johnson's bid indicates a flat rate for service to be provided to that number of houses.
Although Mr. Johnson's bid also refers to an additional amount to be charged for "new residents", an interpretation of the contract that would allow him to collect $1280.00 for serving only the specific residents (or houses) of the Village receiving garbage collection as of July 1, 1995, the date the contract commenced would be inequitable and unreasonable. If such were the case, the Village would be placed in the absurd position of paying the sum of $1280.00 for garbage collection provided to only those original residents who actually received garbage collection as of July 1, 1995, as well as an additional sum of $4.50 for each resident who starts receiving services after that date, even if only a handful of original residents continued receiving garbage collection after July 1, 1995.
In reaching our conclusion in this regard, we are guided by the following Civil Code provisions on the interpretation of contracts:
 "Interpretation of a contract is the determination of the common intent of the parties." (C.C. Art. 2045).
 "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." (C.C. Art. 2050).
 "When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." (C.C. Art. 2054).
 "Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
 "Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation." (C.C. Art. 2055).
We trust the foregoing to be of assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv jmz.ops-96.31